# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20113

United States Court of Appeals
Fifth Circuit

**FILED**
June 24, 2019

Lyle W. Cayce
Clerk

I. L.,

      Plaintiff - Appellant

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT; ROBERT SCOTT ALLEN, Individually and In His Official Capacity; HARRISON PETERS, Individually and In His Official Capacity; JUSTIN FUENTES, Individually and In His Official Capacity,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-2503

Before DAVIS, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

An incoming student experienced an incident of unwanted sexual contact with an older student on the premises of Houston's High School for the Performing and Visual Arts ("HSPVA") during school hours. After this was reported, the Houston Independent School District ("HISD") performed an immediate internal investigation, while turning over a potential criminal

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20113

investigation to the district's police department.   HISD also placed a strict no-contact order on the male student that was largely successful in preventing all contact between him and the victim and prevented any further sexual harassment.   Having carefully reviewed the record in light of the parties' briefs, oral argument and applicable law, we conclude that the district court correctly granted summary judgment to HISD on Plaintiff's Title IX claim.   As a matter of law, the school district did not act with deliberate indifference.

## BACKGROUND

On August 15, 2014, during orientation for the upcoming school year, Appellant I.L.[1] was sexually assaulted by a fellow student ("S.S.") at HSPVA. The students had previously exchanged text messages, some of which were graphic, but I.L. declined S.S.'s request for a romantic relationship.   After the sexual assault, I.L. was found crying uncontrollably in a restroom by her friend and was escorted to a counselor's office.   There, she completed a handwritten statement at the request of the school counselor, Travis Springfield. Both students' parents were called, and the school Principal, Robert Allen, and Assistant Principal, Mercy Alonso-Rodriguez, questioned S.S. until HISD police officers began questioning the young man.

Based on the text messages and a security video, both of which are unavailable, school officials testified that they were initially uncertain about whether the sexual contact was consensual.   School officials did not immediately discipline S.S., but instituted a program to keep the students separated until the conclusion of an HISD police investigation.   Larry Trout, an Assistant Principal, was tasked with ensuring that S.S. had no contact with

---

[1] Because the students involved were minors they are referred to by their initials.

No. 18-20113

I.L.   He spoke with S.S. the same day, told him that he was to have no contact with I.L., that if S.S. saw I.L. in the hallway he should go the opposite direction, that he was not to be alone with I.L. at any time, and that if I.L. entered a room he was in he had to leave the room immediately.   These instructions were also communicated to S.S.'s mother.   Throughout the first semester of the 2014–2015 school year, Trout would find S.S. during lunch, in the hallway, or after school to ensure S.S.'s compliance, and he met with S.S. monthly to ask whether there was any contact.   Trout testified that he neither observed nor heard about any such contact.

The school otherwise tried to support I.L. in several ways.   Assistant Principal Rodriguez told I.L. she was available any time she needed to talk, and would periodically ask I.L. how she was doing, to which I.L. always responded that she was doing fine.   Springfield worked with I.L.'s parents to address her academic and attendance problems and told her that she could come to him any time she felt upset.   I.L. suffered in her mental and physical health throughout the 2014–2015 school year and eventually transferred to another school during the second semester of the school year.

The school's no-contact regime was largely successful.   I.L. and S.S. never came into contact except for an occasion when they inadvertently bumped into each other in a school staircase.   I.L. did complain to Springfield that she continued to see S.S. in the hallway and at lunch, which upset her, but Springfield replied this was inevitable on a small campus.

Plaintiffs, I.L. and her parents, filed this lawsuit, and after a round of amended complaints and motions to dismiss, only a Title IX discrimination claim against HISD and an equal protection claim under 42 U.S.C § 1983

No. 18-20113

against the individual defendants remained.    The district court granted summary judgment in favor of HISD on both claims.    On the Title IX claim, the district court rejected Plaintiffs' argument that HISD should have "conducted a more thorough investigation independent of the HISD police department investigation, and that HISD should have taken more severe action against S.S." and concluded that her evidence did not support a Title IX claim.    Plaintiffs have appealed only the disposition of the Title IX claim.

Restated in more detail, the district court found that the school's response to the incident, including its investigation and deference to the HISD police department investigation, were not clearly unreasonable as a matter of law.    First, the school did investigate by interviewing both parties and reviewing surveillance footage.    Second, Plaintiffs did not identify any witnesses that HISD failed to interview or any additional investigation HISD should have conducted.    Third, Plaintiffs' complaint that school staff did not report the incident to Texas Child Protective Services ("CPS") or state law enforcement, but only to the school police, misunderstands the Texas Family Code, which allows a report of child abuse to be made to a *local* law enforcement agency.    *See* TEX. FAMILY CODE § 261.103(a)(1).    In the end, the court reasoned, HISD's decision to "rely on the investigative expertise of a law enforcement agency" by deferring to the investigation of its police department, rather than its own staff, is "not 'clearly unreasonable'" where there is "some indication that the incident may have been consensual, and where there is the potential for criminal charges if it was an assault."

Similarly, the district court found that the restrictions imposed on S.S. were "significant" and "successful in preventing all but isolated encounters

No. 18-20113

between the two students" and thus were not clearly unreasonable as a matter of law.   While Plaintiffs argued that they advised school staff that I.L. felt uncomfortable, the "extremely vague" testimony established only that I.L.'s mother told school staff that I.L. "wasn't feeling comfortable at school," and her father talked to Rodriguez about an "unspecified topic."   I.L. identified "no statements . . . that would have placed the school on notice that S.S. was continuing to harass I.L., if there was in fact ongoing harassment," and I.L.'s testimony undermined that contention.

On appeal, Plaintiffs principally repeat the arguments they pressed below.   They fault the school's response in five ways: (1) failing to immediately discipline S.S.; (2) waiting on the HISD police report; (3) failing to report the sexual assault to Texas Child Protective Services ("CPS"); (4) ignoring I.L.'s physical and mental symptoms; and (5) ignoring I.L.'s parent's requests. Taken together, they argue, these failures demonstrate that HISD had knowledge of the harassment, was deliberately indifferent to I.L.'s needs, and denied I.L. the benefits of her education in violation of Title IX.   HISD responds that I.L. has not adduced evidence to imply (1) that the district had any actual knowledge of problems between I.L. and S.S. preceding the sexual assault or any ongoing sexual harassment of I.L. by S.S., or (2) that HISD's actions were deliberately indifferent.

## STANDARD OF REVIEW

"We review [a] summary judgment *de novo.*"   *Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 435 (5th Cir. 2011). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ.

No. 18-20113

P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505 (1986). The evidence is to be viewed "in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). The movant has the burden of showing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Once the moving party has carried its burden, the non-movant must come forward with specific facts showing a genuine factual issue for trial. *Id.*

## DISCUSSION

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). A school that receives federal funding may be held liable for student-on-student sexual harassment. *See Davis v. Monroe Cty. Bd of Educ.*, 526 U.S. 629, 119 S. Ct. 1661 (1999); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011). To prove such a claim, a plaintiff must show that "the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the district was deliberately indifferent to the harassment." *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 689 (5th Cir. 2017) (quoting *Sanches*, 647 F.3d at 165).

No. 18-20113

Deliberate indifference under Title IX means that the school's response or lack of response was "clearly unreasonable in light of the known circumstances." *Sanches*, 647 F.3d at 167–68 (citations omitted). Neither "negligence nor mere unreasonableness is enough." *Id.* (citations omitted). Schools need not "remedy the harassment or accede to a parent's remedial demands," and "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* (citations omitted). The law does not require schools to expel or suspend any student accused of sexual harassment in order to avoid liability. *See Davis*, 526 U.S. at 648–49, 119 S. Ct. at 1661, 1673–74 (schools need not "purg[e]" all harassment or expel every student accused of misconduct). "[T]here is no reason why courts, on a motion . . . for summary judgment . . . could not identify a response as not clearly unreasonable as a matter of law." *Sanches*, 647 F.3d at 167–68 (citations omitted).

The district court correctly concluded that Plaintiffs' evidence and arguments do not support a Title IX claim because HISD's response was not clearly unreasonable as a matter of law. Plaintiffs' argue in essence that the school was deliberately indifferent because it should have done more to investigate the sexual assault allegations, should have been more responsive to I.L.'s parents' demands, such as expelling or suspending S.S. or allowing I.L. to transfer promptly to another school, and should have complied with certain administrative requirements.[2] But Plaintiff ignores what the district *did* do.

---

[2] As the district court noted, I.L.'s complaint that school staff did not report the incident to Texas Child Protective Services or state law enforcement, but only to the school police, misunderstands the Texas Family Code, which allows a report of child abuse to be made to a local law enforcement agency. See TEX. FAMILY CODE § 261.103(a)(1).

7

No. 18-20113

The school immediately investigated the sexual assault and implemented remedial measures that were almost entirely successful in eliminating *any* contact between the students and prevented future sexual contact or harassment. Even if the school's investigative and disciplinary response could have been better, neither "negligence nor mere unreasonableness is enough" to support a Title IX deliberate indifference claim. *Sanches*, 647 F.3d at 167–68 (citations omitted).

That this case involves a single instance of sexual harassment on a school campus is particularly relevant to our analysis.[3] I.L. does not allege that the school knew of any prior subsequent sexual harassment by S.S., including the text messages, or that those messages constituted sexual harassment. The school's response to the assault protected I.L. from later sexual harassment and nearly all contact with S.S. Because the deliberate indifference inquiry focuses on the school's response to known harassment, the response must be so deficient as to *itself* constitute harassment. Based on the success of the measures HISD invoked, however, no reasonable jury could conclude that the school's response was clearly unreasonable.

---

[3] The Supreme Court has recognized that single instances of sexual harassment typically do not involve behavior "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 652–53, 119 S. Ct. 1671, 1676 (1999). Thus, Title IX claims typically do not attach to a single instance of sexual harassment. The Court reasoned that Congress could not have intended such a result in light of the "inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." *Id.* Thus, the Court, "[b]y limiting private damages actions to cases having a systemic effect on educational programs or activities, [] reconcile[d] the general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior, realities that Congress could not have meant to be ignored." *Id.*

No. 18-20113

Nor was the school required to provide I.L. with her chosen remedy, for schools need not "remedy the harassment or accede to a parent's remedial demands," and "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* (citations omitted).   The school might have suspended or expelled S.S., as it ultimately did because he committed further sexual misconduct immediately before graduation, but the law does not require that response in order to avert Title IX liability.   *See Davis,* 526 U.S. at 648–49, 119 S. Ct. at 1661, 1673–74.

I.L. argues that summary judgment should be denied because of additional disputed factual issues – including whether the sexual assault was consensual and what was the nature of school-parent interaction.   But these factual disputes are immaterial to whether the school's response was clearly unreasonable as a matter of law.   First, whether the assault was *actually* consensual is not relevant.   It is the school's response to allegations of sexual assault, consensual or not, that determines whether the school acted with deliberate indifference.   We agree with the reasoning of the district court that in "a situation where there is some indication that the incident may have been consensual, and where there is the potential for criminal charges if it was an assault, it is not 'clearly unreasonable' to rely on the investigative expertise of a law enforcement agency."   This analysis did not presume that the act was consensual, but instead gauged the district's response to a factually complex situation.

Second, the competing evidence concerning interactions between the school and the parents does not foreclose summary judgment.   Even when viewed in the light most favorable to I.L., these vague communications are

insufficient to establish that the school district possessed any knowledge that might have rendered its response deliberately indifferent.   The district court correctly noted that "the cited testimony is extremely vague and establishes only that I.L.'s mother notified HSPVA that I.L. 'wasn't feeling comfortable at school' and her father talked to Rodriguez about some unidentified topic."   I.L. also argues that the school was deliberately indifferent to I.L.'s emotional and physical health problems, which she argues are symptoms of PTSD from the sexual assault.   But she has not established that HISD connected these symptoms to her assault rather than her epilepsy, of which it was aware.   Nor does the evidence furnish a basis for inferring that HISD was informed of any potential connection by I.L., her parents, or medical sources.   In fact, I.L. admits more than once that she never confided in the school counselors, or even her parents, about her ongoing fears.   These vague communications raise no genuine, material issue as to whether HISD responded with deliberate indifference to I.L.'s condition in the weeks and months following the assault.

The grant of summary judgment here is supported by decisions of other circuits arising from similar facts.   In *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817 (7th Cir. 2003), the court rejected a plaintiff's suggestion that a school's response to peer harassment was clearly unreasonable even though the school was *unsuccessful* in preventing future sexual harassment.   Title IX did not require that "the school district must have effectively ended all interaction between the two students to prevent conclusively any further harassment" because "*Davis* does not require funding recipients to remedy peer harassment."   *Id*. at 825.   Rather, "*Davis* disapproved of a standard that would force funding recipients to suspend or

No. 18-20113

expel every student accused of misconduct.    All that *Davis* requires is that the school not act *clearly unreasonably* in response to known instances of harassment."    *Id.* at 825 (citations omitted).    *See also Deweese v. Bowling Green Indep. Sch. Dist.,* 709 F. App'x. 775 (6th Cir. 2017) (finding no Title IX liability because the remedy following sexual assault prevented the male student from further harassing the victim although the students continued to see each other daily and offender remained on campus).

In no way do we minimize the consequences to I.L. of the assault she endured or its consequences for her well-being.    Under the law applicable to recipients of federal funding, however, and on the facts established in this record, there is no dispute that HISD did not exhibit deliberate indifference in responding to the assault, preventing further harassment, dealing with S.S., and attempting to palliate I.L.'s experience at school.

## CONCLUSION

The judgment of the district court is **AFFIRMED**.

11